IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MICHAEL CLEMSON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | No. 13-4919 |
| *Acting Commissioner of Social Security*, | : | |
| Defendant. | : | |

## MEMORANDUM

PRATTER, J.                                                                                                                         MAY 19, 2015

### I.   INTRODUCTION

James Michael Clemson brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After independent consideration of the Administrative Record, submitted pleadings, U.S. Magistrate Judge Lynne A. Sitarski's Report and Recommendation, and Mr. Clemson's Objections thereto, the Court approves and adopts the Report and Recommendation in part and denies it in part. The Court grants in part and denies in part Mr. Clemson's Request for Review. The Court finds a lack of substantial evidence supporting the Administrative Law Judge's decision to discredit medical opinions from various sources, and the Court remands to the Commissioner for further proceedings.

### II.   BACKGROUND

Mr. Clemson, born in 1960, was 48 years old at the alleged onset of his disability. Mr. Clemson did not complete high school or obtain a GED. He has been employed in the past as a longshoreman and as an inspector. He lives with his mother. Mr. Clemson alleges he has been

1

disabled since September 9, 2008, as a result of his coronary artery disease, hypertension, kidney failure, depressive disorder, and seizures. Mr. Clemson's claim for benefits was denied by the Social Security Administration on January 16, 2010. Mr. Clemson then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before the ALJ on October 31, 2011. The ALJ heard testimony from Mr. Clemson and from a vocational expert.

The ALJ reached a decision denying Mr. Clemson's claim for disability benefits on December 9, 2011. The Appeals Council denied review of that decision on July 3, 2013. Mr. Clemson then sought judicial review of the ALJ's decision pursuant 42 U.S.C. § 405(g). The case was referred to Magistrate Judge Sitarski for a Report and Recommendation. Magistrate Judge Sitarski recommended denying Mr. Clemson's request for review. Mr. Clemson has objected to that recommendation.

### III. STANDARD OF REVIEW

When a party makes a timely and specific objection to a portion of a magistrate judge's Report and Recommendation, the district court applies a *de novo* review to the issues raised on objection. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. *Id.*

However, the district court may review the ALJ's final decision only in order to determine "whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Stated differently, the court "is bound by the ALJ's findings of fact if they are supported by substantial evidence on the record." *Plummber v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). The court may not "weigh the evidence," *Williams v. Sullivan*, 970 F.2d 1178, 1183 (3d Cir. 1992), and "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the court] would have decided the factual inquiry differently," *Hartranft*, 181 F.3d at 360.

An ALJ's decision must present sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). While the ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially significant, probative evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).

A claimant bears the burden to show disability because he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the regulations implementing the Act, the Commissioner uses a five-step sequential process to determine whether a person is "disabled."[1] The claimant satisfies the burden of proving disability

---

[1] This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment or severe combination of impairments; (3) has an impairment that meets or medically equals the requirements of a listed impairment; (4) has a residual functional capacity to perform the claimant's past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920.

by showing an inability to return to his past relevant work. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). Once the claimant makes this showing, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, the claimant has the ability to perform specific jobs existing in the economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Rutherford*, 399 F.3d at 551.

**IV.     DISCUSSION**

Mr. Clemson raises two objections to the Report and Recommendation. First, Mr. Clemson argues that Magistrate Judge Sitarski improperly upheld the ALJ's finding that Mr. Clemson's mental impairments were non-severe and did not impair his ability to perform a full range of light work. Second, Mr. Clemson argues that Magistrate Judge Sitarski improperly upheld the ALJ's classification of Mr. Clemson's past work. As discussed below, the Court sustains Mr. Clemson's first objection and overrules his second objection.

**A.  The ALJ's Evaluation of Mr. Clemson's Mental Impairments**

The Court concludes that the ALJ failed to properly evaluate the medical evidence concerning Mr. Clemson's mental impairments. Each of the medical opinions in the record states that Mr. Clemson's mental impairments cause at least moderate limitations in his ability to perform mental work-related functions, such as appropriately responding to the pressures of the workplace. The ALJ rejected each of these findings of moderate limitations. The Court finds that there is not substantial evidence to support this aspect of the ALJ's decision. In particular, the Court finds that the discrediting of portions of the opinions of Drs. Johnson, Suminski, and McKenzie was unsupported by substantial evidence. Because the treatment of these opinions was crucial to the ALJ's analysis, the Court will remand for proper consideration of them.

1.  **Dr. Johnson**

Mr. Clemson was examined by consultive examiner Charles Johnson, Psy.D. Dr. Johnson found that Mr. Clemson was moderately impaired in his ability to respond appropriately to work pressures in a usual work setting. However, the ALJ determined "that finding to be unsupported by the objective evidence." Tr. 21. In support of this determination, the ALJ cited (a) Dr. Suminski's finding that Mr. Clemson had a "very good work history having worked from 1983 to 2008 before being laid off;" and (b) that "the claimant's mental health symptoms are nominal when he is compliant with medication." Tr. 21-22. However, neither of these reasons supports the ALJ's discrediting of Dr. Johnson's finding.

Mr. Clemson's alleged onset of disability post-dates the period during which he was found to have had a "very good work history," making that piece of evidence largely irrelevant to the question before the ALJ. Dr. Suminski himself found Mr. Clemson to have moderate limitations in his ability to respond appropriately to changes in the workplace setting, as well as in his ability to interact appropriately with the general public and to accept instructions and respond to criticism from supervisors. Tr. 499. Dr. Suminski's findings, therefore, do not provide substantial support for the ALJ's discrediting of Dr. Johnson's findings of moderate limitations in Mr. Clemson's ability to respond to workplace pressures.

In support of the statement that "the claimant's mental health symptoms are nominal when he is compliant with medication," Tr. 22, the ALJ cites Exhibit 18F. Exhibit 18F is a report from a forensic evaluation undertaken to determine whether Mr. Clemson could obtain the capacity to be tried in federal court. *See* Tr. 524. The report does note that Mr. Clemson had experienced "significant improvement" while on antidepressants, and that Mr. Clemson was competent to stand trial because he was receiving "adequate medication therapy." Tr. 531. But this evaluation was

5

undertaken to determine whether Mr. Clemson could understand the legal proceedings and work affirmatively with his attorney—not to determine whether Mr. Clemson could work without limitations. Tr. 531. Moreover, the report notes in several places that Mr. Clemson's symptoms were not entirely relieved by medication. The report notes that although he "reports significant improvement with past antidepressant therapy . . . residual symptoms have persisted." Tr. 531. The report also notes that Mr. Clemson does suffer from a severe mental disease or defect. Tr. 531. This report does not provide substantial evidence for the discrediting of Dr. Johnson's finding that Mr. Clemson is moderately limited in his ability to respond to workplace pressures.

### 2. Dr. Suminski

The ALJ also discredited some of the findings made by Michael Suminski, Ph.D. Dr. Suminski did not examine Mr. Clemson, but submitted an assessment of his ability to work, finding that Mr. Clemson had moderate limitations in social functioning, such as his ability to "interact appropriately with the general public," as well as his ability to respond to changes in the work setting. Tr. 499. The ALJ discredited these findings, arguing that they were unsupported by objective evidence. However, the ALJ cites as support only that Mr. Clemson "socializes with his mother daily and with other relatives occasionally." Tr. 22. Socializing with one's mother is hardly probative—one way or another—of one's ability to interact appropriately with the general public. The ALJ did not address Dr. Suminski's finding that Mr. Clemson was moderately limited in his ability to respond to changes in the workplace, other than to note that "Dr. Suminski's opinion regarding disability is given significant weight only to the extent that it is consistent with the established residual functional capacity." Tr. 22. This logic, which the ALJ also used to reject a portion of Dr. Johnson's findings, *see* Tr. 22, is circular. The ALJ was purportedly evaluating Dr.

Suminski's opinion to determine Mr. Clemson's residual functional capacity. The ALJ cannot discredit Dr. Suminski's opinions simply by citing the result of the analysis.

### 3. Dr. McKenzie

Clancy McKenzie, M.D., a specialist in psychiatry and neurology, treated Mr. Clemson monthly starting in March 2010. Dr. McKenzie assessed Mr. Clemson as having marked limitations in most areas, including in his ability to respond appropriately to changes in the work setting, and scored Mr. Clemson's Global Assessment of Functioning ("GAF") at 45, which signifies a serious impairment in Mr. Clemson's functioning. Dr. McKenzie also listed Mr. Clemson as being incapable of tolerating even "low stress" work environments. Tr. 716. He prescribed Mr. Clemson Oxycodone and Xanax for his physical and mental symptoms. Tr. 715.

The ALJ gave Dr. McKenzie's assessment "little weight," and did not mention the GAF score of 45. Tr. 23. The Court finds that the ALJ's discrediting of Dr. McKenzie's assessment was not supported by substantial evidence. The ALJ gave three reasons for discrediting Dr. McKenzie's assessment: (1) "there is no evidence of the use of any medications designed to treat psychiatric or mental symptoms;" (2) Dr. McKenzie's notes do not "reveal the type of significant mental status findings one would expect if the claimant were in fact disabled and the doctor did not specifically address this weakness;" and (3) "[i]t is clear that Dr. McKenzie relied quite heavily on the [unreliable] subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." Tr. 23. None of these offered reasons, however, can support the decision of the ALJ to reject or minimize the assessment by Mr. Clemson's treating physician.

The Court agrees with Magistrate Judge Sitarski that the ALJ erred in stating that there was no evidence that Dr. McKenzie had prescribed medications for Mr. Clemson's psychiatric and

7

mental symptoms. In fact, Dr. McKenzie had prescribed Mr. Clemson six Xanax per day for severe anxiety. Tr. 715. The Court is troubled by the ALJ's failure to consider this evidence. At the very least, whether a treating physician is prescribing medication for a claimant's symptoms can be central to determining how to weigh a physician's assessments of the seriousness of the claimant's impairments.

The ALJ's other two reasons for rejecting Dr. McKenzie's assessment likewise do not amount to substantial evidence to support the ALJ's decision to give the assessment little weight. Contrary to the ALJ's assertion, Dr. McKenzie's notes, while scant and often illegible, do contain certain findings as to the mental status of Mr. Clemson. The notes document that: in February 2010, Mr. Clemson was having suicidal thoughts, delusions and hallucinations; in April 2010, he was making some improvements on his depression but his living situation was keeping him depressed and upset nonetheless; in February 2011, he was trying to plan what to do with the rest of his life; in April 2011, he was dreaming of his younger brother visiting him in a hospital; in May 2011, he was having suicidal thoughts;[2] in July 2011, he was having nightmares and flashbacks to a car crash; in September 2011, he was having suicidal thoughts; and in October 2011, he was having suicidal thoughts. Tr. 718-29. These notes, while not part of a voluminous, detailed record of mental status findings, warrant at least some consideration by the ALJ. However, the ALJ's opinion fails to mention these notes other than to assert that the notes "fail to reveal the type of significant mental status findings one would expect if the claimant were in fact disabled." Tr. 23. This somewhat conclusory explanation falls short of the analysis needed for the Court to review the ALJ's decision. *Cf. Fargnoli v. Massanari*, 247 F.3d 34, 43-44 (3d Cir. 2001)

---

[2] The notes state that Dr. McKenzie was "discussing spiritual things [with Mr. Clemson] to fortify his desire to live," Tr. 726, from which the Court infers Mr. Clemson was having, at least to some extent, suicidal thoughts.

("The ALJ makes no mention of any of these significant contradictory findings, leaving us to wonder whether he considered and rejected them, considered and discounted them, or failed to consider them at all. 'The ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence was error.'" (quoting *Cotter*, 642 F.2d at 707)). When such scant analysis is considered in conjunction with the ALJ's misstatement regarding the medication prescribed by Dr. McKenzie, the Court is left with concerns about whether the ALJ fully and appropriately considered the findings of Dr. McKenzie. *Cf. Cotter*, 642 F.2d at 706-07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper. . . . The ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence was error. Moreover, as noted above, the ALJ appears to have misunderstood some of Dr. Kimber's findings and this misunderstanding may have affected his decision.") (citation omitted).

Finally, the ALJ's statement that "[i]t is clear that Dr. McKenzie relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported," is not supported by substantial evidence. Tr. 23. The ALJ's decision provides no explanation for why the terse and often illegible notes of Dr. McKenzie allow for the conclusion that Dr. McKenzie relied "quite heavily" and uncritically upon Mr. Clemson's subjective report of symptoms and limitations. Such a speculative leap cannot support the ALJ's decision.[3] *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)

---

[3] Because the Court has found that the ALJ's treatment of Dr. McKenzie's report was not supported by substantial evidence, the Court also declines to adopt the portion of Magistrate Judge Sitarski's Report and Recommendation discussing the GAF score of 45 assigned by Dr. McKenzie

("In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion."); *Morales*, 225 F.3d at 319 ("The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability.").

Because the ALJ failed to adequately analyze the findings of Drs. Johnson, Suminski, and McKenzie, the Court will vacate the ALJ's decision and remand the case for reconsideration.

### B.  The ALJ's Classification of Mr. Clemson's Prior Work

Mr. Clemson also objects to Magistrate Judge Sitarski's finding that the ALJ properly categorized Mr. Clemson's past work. Although the Court will vacate the ALJ's residual functional capacity determination for the aforementioned reasons, the Court also finds that the Report and Recommendation thoroughly and correctly examined the ALJ's reasoning in this regard. The Court adopts Magistrate Judge Sitarski's analysis and likewise rejects Mr. Clemson's challenge to this portion of the ALJ's decision.

---

to Mr. Clemson. The ALJ's failure to mention the GAF score is further confirmation that the ALJ should have more thoroughly considered and discussed the findings of Dr. McKenzie.

## V. CONCLUSION

For the foregoing reasons, the Court approves and adopts the Report and Recommendation in part and denies it in part. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE